UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

IN RE:

Motors Liquidation Company, et al.,
f/k/a General Motors Corporation, et al.

*This Document Relates to:*
*19-CV-01852*
*14-MD-2543*

No. 19-CV-01852 (JMF)

Hon. Jesse M. Furman

----------------------------------------------------------------------------x


**GENERAL MOTORS LLC'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION TO WITHDRAW THE REFERENCE OF
ECONOMIC LOSS PLAINTIFFS' RULE 23 MOTION**

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone: 312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*MDL 2543 Counsel for General Motors LLC*

Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
Sarah Harnett
Dan Youngblut
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Bankruptcy Counsel for General Motors LLC*

Dated: March 29, 2019

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................1

ARGUMENT.....................................................................................................3

I. SUBSTANTIAL AND MATERIAL ISSUES OF FEDERAL LAW REQUIRE
WITHDRAWING THE REFERENCE.................................................................3

    A.    The Proposed Limited Fund Settlement of Unliquidated Monetary
Damages Claims Raises Substantial and Material Issues of Federal Law..............4

    B.    The Substantial Number of Putative Class Members Shown By Plaintiffs'
Expert to Have No Injury or Damages Raises Substantial and Material
Issues of Federal Law. ............................................................................7

    C.    The Settlement Proponents' Failure to Establish Appropriate Subclasses
*Now* Violates Federal Law and Raises Serious Due Process Concerns..................8

    D.    Whether Class Actions For Monetary Relief Under Rule 23(b)(1)(A)-(B)
Require Notice And Opt Out Rights Is An Unresolved Question Of
Constitutional Law..................................................................................9

    E.    Settlement Proponents' Interstate Commerce Argument Is Erroneous. .................9

II. SETTLEMENT PROPONENTS' FILINGS CONFIRM THE OVERLAP BETWEEN
THE PROPOSED SETTLEMENT AND THE MDL PROCEEDINGS AND THAT
PERMISSIVE WITHDRAWAL SHOULD BE GRANTED.............................................10

    A.    Settlement Proponents Concede That The Proceedings Before This Court
And The MDL Court Overlap and Are Inextricably Intertwined. ........................11

    B.    Asking Two Courts to Consider The Same Arguments, the Same Cases,
and the Same Evidence Is Inefficient and Risks Inconsistent Rulings. .................12

    C.    Withdrawing the Reference Will Not Cause Delay but Will Avoid the
Risks of Inconsistent Rulings and Litigation Resulting From Such
Rulings. ............................................................................................12

    D.    The Overlap With the MDL Provides Ample Cause To Grant Permissive
Withdrawal, Regardless of Whether the Matter Is Core........................................13

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1800Postcards, Inc. v. Morel*,
    153 F. Supp. 2d 359 (S.D.N.Y. 2001)......................................................................13

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 .............................................................................................7, 14, 15

*Catalano v. BMW of N. Am., LLC*,
    167 F. Supp. 3d 540 (S.D.N.Y. 2016)....................................................................8

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991)....................................................................................4

*Denney v. Deutsche Bank AG*,
    443 F. 3d 253 (2d Cir. 2006)..............................................................................7, 8

*Doe v. Karadzic*,
    192 F.R.D. 133 (S.D.N.Y. 2000) ...........................................................................6

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ...............................................................................14

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    2006 WL 337667 (S.D.N.Y. Feb. 10, 2006).........................................................13

*In re Complete Mgmt., Inc.*,
    2002 WL 31163878 (S.D.N.Y., Sept. 27, 2002)....................................................13

*In re Joint E. and S. Dist. Asbestos Litig. (Manville III)*,
    982 F.2d 721 (1992)...........................................................................................8, 15

*In re Lyondell Chem. Co.*,
    467 B.R. 712 (S.D.N.Y. 2012)..............................................................................14

*In re Orion Pictures Corp.*
    4 F.3d 1095 (2d Cir. 1993)..............................................................................12, 14

*In re Payment Card*,
    827 F.3d 223 (2d Cir. 2016)....................................................................................8

*In re Telectronics Pacing Sys., Inc.*,
    221 F.3d 870 (6th Cir. 2000) ..................................................................................6

*Klein v. O'Neal, Inc.*,
    2006 WL 325766 (N.D. Tex. Feb. 13, 2006) ........................................................6

*Mishkin v. Ageloff*,
    220 B.R. 784 (S.D.N.Y. 1998) ..............................................................................12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................................. *passim*

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...............................................................................................9

*Picard v. Flinn Invs., LLC*,
    463 B.R. 280 (S.D.N.Y. 2011) ..............................................................................10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 4077586 (S.D.N.Y. Aug. 2, 2013) ................................................4, 6, 10

*SEC v. Churchill Securities, Inc.*,
    223 B.R. 415 (S.D.N.Y. 1998) ..............................................................................15

*Stern v. Marshall*,
    564 U.S. 462 (2011) .............................................................................................14

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ........................................................................4, 6

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...........................................................................................7

*Wellness Int'l. Network, Ltd. v. Sharif*,
    135 S. Ct. 1932 (2015) .........................................................................................15

**Statutes**

28 U.S.C. § 157(d) ......................................................................................3, 8, 10

Class Action Fairness Act of 2005 .....................................................................10

U.S. Const. art. VI ..............................................................................................10

**Rules**

FED. R. CIV. P. 23 .................................................................................... *passim*

**Other Authorities**

McLaughlin on Class Actions § 5:10 (15th ed.) .......................................................6

Robert H. Klonoff, *Class Actions for Monetary Relief Under Rule 23(b)(1)(a) and (b)(1)(b): Does Due Process Require Notice and Op-Out Rights?*, 82 GEO. WASH. L. REV. 798 (2014) ......................................................................................... 4, 9

# INTRODUCTION

The Settlement Proponents insist that preliminary approval of the proposed class settlement is the sort of run-of-the-mill exercise that bankruptcy courts perform all the time, and that preliminary approval would be "entirely distinct" from the MDL matters pending before this Court. In fact, New GM is not aware of any bankruptcy court that has ***ever*** certified a limited fund class after the Supreme Court reversed a similar settlement in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). Furthermore, Settlement Proponents have already informed the Bankruptcy Court (but fail to mention in their response here) that they will not send notice of the Proposed Settlement until the claims and population of the proposed classes is fixed by ***this Court's*** rulings on pending summary judgment, *Daubert,* and related MDL motions. (Pls. Stay Obj. (Bankr. Dkt. 14447) ¶¶ 6, 32.) Instead, Plaintiffs now ask for a stand-alone "probable cause" prediction from the Bankruptcy Court of whether it will likely be able to approve a settlement of unknown claims for an undefined class. This unprecedented request raises significant due process and Article III issues and confirms what Plaintiffs have all but admitted: that their Rule 23 Motion is inextricably tied to the proceedings in this Court. In these circumstances, withdrawal of the reference—both mandatory and permissive—is warranted.

Plaintiffs' motion originally asked the Bankruptcy Court, pursuant to Rule 23(e), to: (i) find that it will "likely be able to" (a) certify a broad class of "all persons" who owned or leased Old GM vehicles subject to certain recalls and (b) approve the latest version of the class settlement as fair, reasonable, and adequate; and (ii) approve the immediate dissemination of notice to millions of purported class members—all on an expedited schedule, without the evidence required by Rule 23(e), and before this Court rules on pending summary judgment, class certification, and *Daubert* motions. The Settlement Proponents did not explain why expedited consideration and preliminary approval was necessary.

After New GM filed its motion seeking withdrawal of the reference, and after it objected that the proposed notice was premature and potentially inconsistent with this Court's future rulings, would cause confusion, and would waste millions of dollars in GUC Trust assets, Plaintiffs withdrew their request for immediate notice. (Pls. Stay Obj. (Bankr. Dkt. 14447) ¶¶ 6, 82.) Besides deferring notice, Plaintiffs told the Bankruptcy Court (but not this Court) that, contrary to what they said in their Rule 23 Motion, the Bankruptcy Court need not "contemplate class certification" until the final approval hearing and that under "new Rule 23(e), the Court is not at this time certifying settlement classes (either on a preliminary or final basis)." (Bankr. Dkt. 14463 at ¶¶ 63, 60). Yet, inexplicably, they remain determined to move forward with a preliminary hearing seeking a preliminary finding that the Court will likely be able to approve the settlement. *Id.*

Plaintiffs' revised request for relief is incompatible with the procedures required for court approval of class action settlements.[1] The "preliminary" findings Plaintiffs originally requested serve a specific purpose: to determine whether to send notice to the class. These findings make no sense if notice is deferred, and the entire inquiry will have to be repeated once the class definition is determined (based on this Court's rulings). Nor does withdrawing the request for a preliminary finding regarding class certification eliminate the inefficiencies, as the court must know the class definition and scope to find the proposed relief is adequate and treats class members fairly (as required for preliminary approval). *See* Fed. R. Civ. P. 23(e)(1)(B)(2). The change in the relief sought by Plaintiffs exemplifies the many risks and inefficiencies of proceeding in a

---

[1] Moreover, the "new" amendments to Rule 23(e) do not relax the standard, as Plaintiffs suggest, but implement what has been called the "'frontloading' model for preliminary approval of settlement classes"; the "effect of this requirement is that lawyers seeking to tee up settlement classes will be required to provide significant information up front justifying certification and settlement approval." Steven S. Gensler, 1 FEDERAL RULES OF CIVIL PROCEDURE, Rules and Commentary Rule 23 (Feb. 2019).

separate court on a Proposed Settlement that is so closely intertwined with, duplicates, and overlaps the proceedings in this Court. These risks and costs affect numerous parties, including individuals who never authorized counsel to compromise their claims (and who would have no right to opt out of the Proposed Settlement).

Withdrawing the reference will mitigate these risks and inefficiencies and will protect this Court's management of the recall-related litigation transferred to this MDL, including presale claims. Withdrawal is also necessary to protect the rights of absent parties, who under 28 U.S.C. § 157(d) are entitled to have an Article III court decide, for example, Fifth and Seventh Amendment issues relating to whether their damages claims against the GUC Trust may be released without their consent or right to opt out, in a settlement negotiated without independent counsel representing their conflicting interests, according to an allocation plan to be proposed only after the settlement is final, from a settlement fund that does not exist and may never exist. Plaintiffs' counsel have no authority to consent, on behalf of millions of absent parties, to mandatory adjudication by the Bankruptcy Court of the substantial issues of non-bankruptcy law raised by the Proposed Settlement—issues about which the Supreme Court has expressed "serious concerns." Under these facts, withdrawal of the reference is necessary.

## ARGUMENT

## I. SUBSTANTIAL AND MATERIAL ISSUES OF FEDERAL LAW REQUIRE WITHDRAWING THE REFERENCE.

The Settlement Proponents do not dispute that the "purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code." (New GM Mem. (Withdrawal Dkt. 3) at 15.) Nor do they dispute that there are multiple questions of non-bankruptcy law raised by their proposed limited fund settlement class, but argue that such questions are *routine* and governed by settled law. In fact,

the Proposed Settlement is anything but routine, and would require an unprecedented interpretation of, among other things, Article III, the Due Process Clause, the Rules Enabling Act, and the Seventh Amendment.

Furthermore, courts in this district have rejected "on numerous occasions" the argument that withdrawal is not mandatory for substantial and material interpretation of the Constitution. *See, e.g.*, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 4077586, at *4 (S.D.N.Y. Aug. 2, 2013) (collecting cases). Because the Rule 23 Motion would require the Bankruptcy Court to engage in "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes," *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991), withdrawal is mandatory.

### A. The Proposed Limited Fund Settlement of Unliquidated Monetary Damages Claims Raises Substantial and Material Issues of Federal Law.

Although Settlement Proponents argue that "*Ortiz* was decided nearly two decades ago" and that post-*Ortiz* law on mandatory monetary damages classes is "well-established," (GUC Trust Resp. (Withdrawal Dkt. 16) at 20-22), they are telling an entirely different story on this very point to Judge Glenn in the Bankruptcy Court. There, they rely on authorities stating that (i) *Ortiz* "***raise[s] difficult issues***"; (ii) "[t]he ***courts are in disarray*** regarding the due process rights of [limited fund] absent class members"; and (iii) due to "***lurking due process issues***," certification without opt-out protections should be "***carefully scrutinized and sparingly utilized***."[2] Both before and after *Ortiz*, limited fund certification is "a rare settlement device . . . ." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 320 (N.D. Tex. 2011).

Regardless of the rarity of limited fund classes, Plaintiffs do not and cannot assert that the

---

[2] *See* Robert H. Klonoff, *Class Actions for Monetary Relief Under Rule 23(b)(1)(a) and (b)(1)(b): Does Due Process Require Notice and Opt-Out Rights?*, 82 Geo. Wash. L. Rev. 798, 800, 820 (2014) (emphasis added) (cited in Plaintiffs' Bankruptcy Court Rule 23 Reply at 47) (Bankr. Dkt. 14463).

law is well settled *in their favor*. They fail to cite even one example of *any* court certifying a limited fund class of unliquidated compensatory damage claims in the 20 years following *Ortiz*. Indeed, the Proposed Settlement departs far from all three requirements identified in *Ortiz*, and this "*adventurous application of Rule 23(b)(1)(B)*" raises the "serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale." *Ortiz*, 527 U.S. at 845 (emphasis added).

*First*, the three "*presumptively* necessary" requirements, *see Ortiz*, 527 U.S. at 842 (emphasis added), may not be new, but the Court in *Ortiz* did not in fact resolve complex Fifth and Seventh Amendment and Rules Enabling Act issues it identified. *See id.* at 842-45 (applying the doctrine of "constitutional avoidance"). Moreover, the Supreme Court did "not, it is true, decide the ultimate question whether Rule 23(b)(1)(B) may *ever* be used to aggregate individual tort claims." *Id.* at 844 (emphasis added). A court deciding the Rule 23 motion would have to confront the Constitutional issues raised by the "adventurous" proposed settlement of "aggregate individual tort claims" in this case. *Id.* at 845 ("[I]f we needed further counsel against adventurous application of Rule 23(b)(1)(B), the Rules Enabling Act and the general doctrine of constitutional avoidance would jointly sound a warning of the serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale.").

*Second*, in the limited-fund, non-opt-out context, due process requires (at a minimum) "evidence on which the district court may ascertain the limit and the insufficiency of the fund, with support in findings of fact following a proceeding in which the evidence is subject to challenge." *Ortiz*, 527 U.S. at 849. Although the Plaintiffs claim that the work of their MDL expert Stefan Boedeker satisfies this requirement (Pls. Resp. (Withdrawal Dkt. 15) at 12), significant questions exist as to whether Boedeker's work can provide a Constitutionally sufficient alternative to proving

*liquidated* damages (as required by *Ortiz*). The "median" damages estimates in Boedeker's Report vary wildly and his entire methodology is subject to a *Daubert* challenge that is before this Court.[3] Plaintiffs therefore cannot avoid the Constitutional questions presented by the proposed settlement and cite no cases since *Ortiz* certifying a limited fund class comprising unliquidated claims. *See* McLaughlin on Class Actions § 5:10 (15th ed.) (Oct. 2018 Update) ("[A]fter *Ortiz*, no decision . . . has certified a 'limited fund' class involving unliquidated damages" (other than one that was later reversed)). Where the substantial non-bankruptcy issue is one of first impression, as is the case here, "the burden of establishing a right to mandatory withdrawal is more easily met." *Madoff*, 486 B.R. at 582.

**Third**, substantial non-bankruptcy Constitutional questions arise from Settlement Proponents' denial of **any** potential recovery for the putative settlement class from the GUC Trust's approximately $490 million in liquid assets, because the Constitution requires that "the **whole** of the inadequate fund" be devoted to satisfying the limited fund **class** claims. *Ortiz*, 527 U.S. at 839 (emphasis added). The purported "limited fund" must include *all* available sources— particularly any assets of released entities. *See In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870 (6th Cir. 2000). But here, the GUC Trust's assets, which would constitute between 30% and 100% of the total value of the funds available to pay plaintiffs' claims (depending on the number or value of Adjustment Shares issued, if any), are excluded from the proposed limited fund. This demonstrates that the "fund" is "limited" only by agreement of the settling parties. Moreover,

---

[3] Settlement Proponents cite *Stott v. Capital Fin. Servs., Inc.*, but there, the court could easily ascertain the amounts that each investor lost (*i.e.* the face amount of the security). 277 F.R.D. at 328-29. Here, Boedeker's "median" damages estimates in his GUC Trust Report vary wildly from "$88 to $8094" per vehicle (05/09/2017 Boedeker GUC Trust Report at 33, Ex. C to Berman Supp. Decl. (Bankr. Dkt. 14466)), which hardly provides "any comfortable certainty of the total value of the claims" *Klein v. O'Neal, Inc.*, 2006 WL 325766, at *4 (N.D. Tex. Feb. 13, 2006). The *dicta* in *Doe v. Karadzic*, 192 F.R.D. 133, 140 n.11 (S.D.N.Y. 2000), is readily distinguishable. (*See* GM Mem. at 23 n.31.)

certain non-class members may seek recourse from the settlement fund.  (Pls. Resp. at 13.)  This "hybrid" structure settlement is without precedent, contrary to the rationale for mandatory class treatment, and raises significant Constitutional questions under both *Ortiz* and *Amchem*.

*Finally*, significant non-bankruptcy federal questions exist regarding Settlement Proponents' multi-step framework.  The Settlement Proponents seek certification of non-opt-out classes they admittedly cannot yet define and that only have recourse to a purported limited fund that does not and may never exist.  This raises fundamental Constitutional red flags, and Settlement Proponents already concede that the Proposed Settlement may need to be reconfigured after final certification and settlement approval (or even after this Court's rulings).  *See* Pls. Ex. A, Settlement Agreement (Withdrawal Dkt. 15-1) § 4.5.  This proffered framework is completely foreign to class action practice, and it provides no assurance of the "equitable treatment of class members" required by *Ortiz*.  Settlement Proponents do not dispute that they made no attempt to implement any such protections at the time the settlement was negotiated, and their Rule 23 motion would require the Bankruptcy Court to ignore this Constitutionally-mandated requirement of *Ortiz*.

## B.  The Substantial Number of Putative Class Members Shown By Plaintiffs' Expert to Have No Injury or Damages Raises Substantial and Material Issues of Federal Law.

The *Tyson Foods* Court did not answer, as the Plaintiffs erroneously suggest (Pls. Resp. at 15-17), the question—"of great importance"—whether uninjured class members may recover in a class action, instead holding that the question was not ripe for review.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049–50 (2016).  Likewise, *Tyson Foods* did not address the issue at the heart of the Second Circuit's rule in *Denney* that a "class must therefore be defined in such a way that anyone within it would have standing" and "no class may be certified that contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443 F. 3d 253, 264 (2d Cir. 2006).  Whether, as Plaintiffs essentially suggest, *Tyson Foods* overruled the Second Circuit's

binding precedent from *Denney* is a substantial, material, and novel question of non-bankruptcy

law that § 157(d) intended to be decided by an Article III judge.[4]

### C. The Settlement Proponents' Failure to Establish Appropriate Subclasses *Now* Violates Federal Law and Raises Serious Due Process Concerns.

The Settlement Proponents do not dispute that all putative class members are currently

represented by the same counsel, and will apparently continue to be, until the allocation phase,

which only occurs after final certification. (*See* New GM Mem. at 25.) But unlike cases involving

litigation classes, in which subclasses are often created later in the litigation, there is a *present*

conflict of interest that prevents valid *consent to the settlement*. *See In re Joint E. and S. Dist.*

*Asbestos Litig. (Manville III)*, 982 F.2d 721, 743-44 (1992) (concluding that "subclasses must be

established *before* valid consents to the settlement may be obtained" and "*before* any settlement

is involuntarily imposed" (emphasis added)). This due process violation cannot be ameliorated by

separate counsel at some later time because "the very decision to treat them all the same is itself

an allocation decision with results almost certainly different from the results that the disparate

claimants would have chosen." *See In re Payment Card*, 827 F.3d 223, 232 (2d Cir. 2016) (noting

that the "fault lines…among plaintiffs with differently valued claims" can be so fundamental so as

to require the "'structural protection' in the form of subclasses with separate counsel") (quoting

*Ortiz*, 527 U.S. at 856-57).[5] Given such weighty Constitutional concerns, withdrawal is necessary.

---

[4]  Although Plaintiffs claim that Boedeker establishes that all class members were injured, the testimony of individual MDL plaintiffs and Boedeker's own survey evidence prove the fallacy of this assertion. (*See* New GM's Mem. at 27.) Regardless, whatever the conclusion about the merits of Boedeker's opinions, the Proposed Settlement raises the important question whether such evidence could establish the Constitutional requirement of injury, and hence it is one that must be decided by the district court.

[5]  Settlement Proponents failed to address this point and therefore have waived any argument to the contrary. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016). Although Plaintiffs make a passing reference to class members' shared interest in maximizing the claims in order to obtain the adjustment shares, this would not eliminate the conflict of interest. Class members might agree to compromise their differences in order to obtain a better result for all, but a single lawyer cannot simultaneously represent both sides of such a compromise. *See Ortiz*, 527 U.S. at 858 n.33 (rejecting argument that common interest in securing insurance funds eliminated need for Rule 23 protections).

**D.    Whether Class Actions For Monetary Relief Under Rule 23(b)(1)(A)-(B) Require Notice And Opt Out Rights Is An Unresolved Question Of Constitutional Law.**

In *Phillips Petroleum Co. v. Shutts*, the Supreme Court held that a court must afford class members notice and an opportunity to opt out of any class action concerning claims wholly or predominately for money judgments.  472 U.S. 797, 811-12 & n.3 (1985).  This holding was reaffirmed by the Supreme Court in *Ortiz* and *Dukes*, but according to the authority cited by ***Plaintiffs***, "courts are in disarray over what due process requires in suits for money judgments under (b)(1)(A) and (b)(1)(B)."[6]  The Settlement Proponents cannot avoid these due process concerns by labeling their requested relief as "equitable."  (Bankr. Dkt. 14463 ¶ 104.).  Instead, "due process issues must be confronted directly and cannot be evaded by use of labels or technical personal jurisdiction arguments."  (Klonoff, 82 GEO. WASH. L. REV. at 827.)  Here, regardless of the Settlement Proponents' various and conflicting characterizations of the relief they seek, the issuance of the Adjustment Shares (if ultimately warranted) would provide significant monetary relief to the Plaintiffs and no settlement fund will exist unless the Plaintiffs' claims for monetary damages are sufficient to trigger the Adjustment Shares. Plaintiffs' argument that *Shutts* is distinguishable in and of itself requires this Court—not the Bankruptcy Court—to engage in "significant interpretation" of Constitutional issues.

**E.    Settlement Proponents' Interstate Commerce Argument Is Erroneous.**

Courts in this district have "rejected . . . on numerous occasions" the argument that Constitutional provisions are not "laws of the United States regulating organizations or activities

---

[6]    Klonoff, 82 GEO. WASH. L. REV. at 801, 805 (cited in Pls. Rule 23 Reply (Bankr. Dkt. 14463) at 47).  New GM does not agree with all of the positions set forth in the Klonoff article cited by Plaintiffs, but cites it here to show that the issues are not nearly as simple as plaintiffs claim.  Additionally, *Klonoff* (who is cited by Plaintiffs in their Rule 23 reply) criticizes the very case that Plaintiffs describe as a "persuasive and valuable polestar for [the Bankruptcy Court] to follow" (Bankr. Dkt. 14463 at ¶ 64) for evading the requisite Constitutional analysis: "due process concerns about cases involving money are not eliminated merely by labeling the suit as 'equitable,' as the district court did in the *In re Silicone Gel Breast Implant* case."  (Klonoff at 827.)

affecting interstate commerce." *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 4077586, at *2, *4 (S.D.N.Y. Aug. 2, 2013). "Section 157(d) speaks in terms of 'other laws of the United States,' not other statutes, . . . and drawing an arbitrary line between statutes and the other laws of the United States—including not only common law questions but also those doctrines that derive from the Constitution and treaties—would make little sense." *Id.* at *4 Additionally, "[i]f mandatory withdrawal protects litigants' constitutional interest in having Article III courts interpret federal statutes that implicate the regulation of interstate commerce, then it should also protect, a fortiori, litigants' interest in having the Article III courts interpret the Constitution." *Picard v. Flinn Invs., LLC,* 463 B.R. 280 n.3 (S.D.N.Y. 2011). Indeed, the Constitution is the "supreme law" of the United States, from which other federal laws derive their legitimacy.[7] U.S. Const. art. VI, cl. 2.

## II. SETTLEMENT PROPONENTS' FILINGS CONFIRM THE OVERLAP BETWEEN THE PROPOSED SETTLEMENT AND THE MDL PROCEEDINGS AND THAT PERMISSIVE WITHDRAWAL SHOULD BE GRANTED.

The Proposed Settlement is so intertwined with the MDL proceedings that Plaintiffs cannot even define the settlement class or classes they want the Bankruptcy Court to preliminarily approve until *after* this Court rules on summary judgment, *Daubert*, and other pending matters. Given this overlap and this Court's extensive experience managing discovery and substantive litigation in the MDL for the last five years, this Court should withdraw the reference in the interest of judicial economy and to avoid potentially conflicting rulings. The "core"/"non-core" designation does not carry the same significance here, where all sides have acknowledged that proceedings in the Bankruptcy Court substantially overlap with an already pending MDL proceeding in this Court.

---

[7]    In any event, Congress has long since recognized that "abuses of the class action device . . . adversely affect[] interstate commerce; and undermine[] public respect for our judicial system." Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4 (2005).

**A.     Settlement Proponents Concede That The Proceedings Before This Court And The MDL Court Overlap and Are Inextricably Intertwined.**

Although Plaintiffs attempt to identify certain issues unique to each case—such as the class requirements of Rule 23(b)(1)(B) and 23(b)(3)—they do not and cannot deny the substantial overlap.  To the contrary, they concede, for example, that this Court's rulings on summary judgment will determine the "population of the Classes" and the very claims subject to the Proposed Settlement.  (Pls. Stay Obj. (Bankr. Dkt. 14447) ¶ 25.)  Plaintiffs want to proceed on parallel tracks and propose to "accommodate and assimilate" this Court's rulings "on summary judgment (which may impact the size of the Classes) and *Daubert* in connection with the notice mailing, the final fairness hearing, and claims estimation."  (*Id*. ¶ 32.)

This Court's past and future rulings on pending matters (*e.g.*, certification in the Bellwether States, manifest defect, benefit-of-the-bargain damages, causation and reliance under applicable state law, and the admissibility and legal import of Boedeker's reports) may limit the size and number of potential claims, which will affect Plaintiffs' prospect of obtaining the Adjustment Shares from New GM (the only relief potentially available to the proposed classes).  For example, depending on this Court rulings on whether pre-recall sellers have claims, the Proposed Classes could be reduced (according to Settlement Proponents' own estimates) by more than fifty-four percent (from more than 26 million to almost 12 million potential members).  (Pls. Stay Obj. (Bankr. Dkt. 14447) ¶ 6 n.6.)  These issues are therefore critical to the evaluation of the adequacy of the relief (if any) provided to the proposed classes (which depend on rulings from this Court), in exchange for their agreement to release the GUC Trust from all liability.

The Plaintiffs do not explain how the Bankruptcy Court can possibly determine it will "likely" be able to approve the settlement as fair, reasonable and adequate when the class and claims are not defined, and this Court's rulings may dramatically alter: (i) the size of the potential

class or classes, (ii) the viability of Boedeker's purported estimates, and (iii) the likelihood that any Adjustment Shares will ever be triggered. Without such findings—all of which Settlement Proponents concede will be made by this Court in the near term—preliminary approval cannot be granted. *See* FED. R. CIV. P. 23(e)(1)(B).

### B. Asking Two Courts to Consider The Same Arguments, the Same Cases, and the Same Evidence Is Inefficient and Risks Inconsistent Rulings.

Further confirming the overlap, Plaintiffs in their Rule 23 Reply Brief ask the Bankruptcy Court to consider the same arguments, the same cases, and the same evidence that Settlement Proponents have already submitted to this Court in the context of class certification, *Daubert,* and summary judgment motions, including arguments relating to whether: (1) Article III permits certifying a class action with uninjured class members (*compare* Bankr. Dkt. 14463 at ¶¶ 10, 19-22; *with* MDL Dkt. 6181) at 31-35); (2) a shift in demand curves (for packages of safety features) shows *all* putative class members overpaid for their vehicles (*compare* Bankr. Dkt. 14463 ¶ 24; *with* MDL Dkt. 6181 at 29-31); (3) multiplying per-vehicle loss estimates reliably calculates a difference in "market value" (*compare* Bankr. Dkt. 14463 ¶¶ 74-76; *with* MDL Dkt. 6181 at 37 *and* MDL Dkt. 6187); and (4) adequate recall repairs preclude benefit-of-the-bargain damages (*compare* Bankr. Dkt. ¶ 77; *with* MDL Dkt. 6181 at 46-48 *and* MDL Dkt. 6059 at 4, 33-34).

The inefficiency and the risk of inconsistent rulings would lead to unnecessary and wasted judicial resources (even if the rulings could be reconciled on appeal). Because "the critical question" for permissive withdrawal is "efficiency and uniformity," *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (*citing In re Orion Pictures Corp.* 4 F.3d 1095, 1100 (2d Cir. 1993)), this Court should withdraw the reference.

### C. Withdrawing the Reference Will Not Cause Delay but Will Avoid the Risks of Inconsistent Rulings and Litigation Resulting From Such Rulings.

The Settlement Proponents' complaints about delay are specious. Counsel made a strategic

decision to pursue the pre-sale claims against New GM in this Court in **2014**, and not to oppose

GUC Trust distributions to other creditors.[8]  Meanwhile, they let the claims against the GUC Trust

lay dormant in the Bankruptcy Court until **late 2016**, *i.e.*, after this Court ruled in New GM's favor

on some of Plaintiffs' successor liability claims.  Regardless, because notice and a final fairness

hearing cannot occur "until the population of the Classes is fixed" by this Court's rulings on the

outstanding MDL motions (Pls. Stay Obj. (Bankr. Dkt. 14447) ¶¶ 25, 32),[9] the risk of material

delay from withdrawing the Rule 23 motion is minimal.

> **D.     The Overlap With the MDL Provides Ample Cause To Grant Permissive Withdrawal, Regardless of Whether the Matter Is Core.**

Plaintiffs' contention that designation of a matter as core or non-core "alone nearly ends

the analysis" (Pls. Resp. at 18), ignores that courts routinely withdraw core claims in the interest

of judicial economy, especially when the facts and issues overlap with existing litigation, as here,

or with non-core claims..  *See, e.g.*, *1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367

(S.D.N.Y. 2001) ("[T]he reference of the core proceeding may be withdrawn in the interests of

efficiency when it presents an 'overlapping of facts, transactions, and issues' with a case pending

before the district court."); *accord In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006

WL 337667, at *4 (S.D.N.Y. Feb. 10, 2006) ("[E]ven if all of the Committees' claims could be

properly classified as core, . . . other factors . . .  strongly favor withdrawal" such as "the most

efficient use of judicial resources" and "the costs to the parties"); *In re Complete Mgmt., Inc.,* 2002

WL 31163878, at *3 (S.D.N.Y., Sept. 27, 2002) (assuming that class action was "technically a

core proceeding," but withdrawing the reference because of a pending related securities case).

---

[8]     *See 2/17/2015 H'rg Tr.*  (Bankr. Dkt. 13602) at 112 ("[Y]es[,] there was a strategic element to the decision.").

[9]     The GUC Trust appears to disagree with Plaintiffs regarding the need for this Court to rule first on the MDL motions.  They do not explain, however, why waiting for this Court's rulings on pending motions will "force the GUC Trust to remain open *indefinitely*."  (GUC Trust Resp. at 30 (emphasis added).)

Here, the ignition switch and related litigation is well advanced in this Court, while there has been **no** litigation on the merits in the Bankruptcy Court. Familiarity with the discovery and the pre-settlement litigation claims and defenses provide this Court with the experience relevant to evaluating a class action settlement; by contrast, the Bankruptcy Court lacks the context to ensure that absent class members' rights are protected.[10] Moreover, as even the GUC Trust acknowledges, the Supreme Court in *Stern v. Marshall*, 564 U.S. 462 (2011), held that a bankruptcy court could not, without the parties' consent, adjudicate a so-called "core" counterclaim involving private rights, that would not necessarily be resolved in the course of adjudicating a creditor's proof of claim. (GUC Trust Resp. at 25-26.) After *Stern*, numerous courts have confirmed that the "core/non-core distinction" no longer holds a privileged position among the *Orion* factors. *See, e.g., In re Lyondell Chem. Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012).

In this regard, neither the Plaintiffs nor the GUC Trust cites authority for the Bankruptcy Court to issue the "final adjudication" requested by the Settlement Proponents here, namely the approval of a settlement agreement that includes not only the release of their claims against the GUC Trust by parties who never filed proofs of claims, but also non-core claims for personal injury and claims against other creditors and "related parties."[11] Absent members of a mandatory class with no opt out rights and who never filed proofs of claim cannot "knowingly and voluntarily consent to adjudication by a bankruptcy judge" to release these claims. (GUC Trust Resp. at 26.);

---

[10] *See Ortiz*, 521 U.S. at 852 (noting that "any class action settlement with the potential for gigantic fees" negates any assumption that the settlement outcome is the product of competing adversarial interests); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 ("[A] court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."); *Eubank v. Pella Corp.*, 753 F.3d 718, 728–29 (7th Cir. 2014) (Posner, J.) ("This is a case in which the lawyers support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information.'" (citations omitted).)

[11] *See* Pls. Resp. at 3 ("[F]ollowing entry of the Final Approval Order, the Plaintiffs will be deemed to have waived and released any rights or claims against the GUC Trust and related parties…").

*see Wellness Int'l. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015) ("'notification of the right to refuse' adjudication by a non-Article III court 'is a prerequisite to any inference of consent'" (citation omitted)).  Here, consent is entirely lacking.

In any event, even the Plaintiffs concede that withdrawal of a core matter is appropriate where "'the other factors . . . , taken together, weigh heavily in favor of' withdrawal." (Pls. Resp. at 18 (quoting *SEC v. Churchill Securities, Inc.*, 223 B.R. 415, 419 (S.D.N.Y. 1998)).)  The Proposed Settlement is an "adventurous application" of Rule 23 that raises the "serious Constitutional concerns" highlighted by *Ortiz, Amchem*, and *Manville*, and its success is directly tied to rulings from, and developments in, this Court.  Thus, "other factors, taken together, weigh heavily in favor of" withdrawing the reference.

## CONCLUSION

For these reasons, as well as those discussed in its opening brief, New GM respectfully requests that the Court withdraw the reference for the Economic Loss Plaintiffs' Rule 23 Motion.

Respectfully submitted,

Dated: March 29, 2019

/s/ Richard C. Godfrey, P.C.
Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
andrew.bloomer@kirkland.com
richard.godfrey@kirkland.com

*Counsel for General Motors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2019, I electronically filed the foregoing using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: */s/ Andrew B. Bloomer, P.C.*
      Andrew B. Bloomer, P.C.